We'll hear argument first this morning in Case 22-660, Murray v. UBS Securities. Ms. Anand. Thank you, Mr. Chief Justice, and may it please the Court. Congress passed the Sarbanes-Oxley Act in the wake of the Enron meltdown to encourage whistleblowers to report misconduct that could threaten the finances of millions. The question in this case is how claims that an employer acted with retaliatory intent are to be proven. The plain text of the statute answers that question. District Court actions shall be governed by the burdens of proof in Error 21. Error 21, in turn, places exactly one burden of proof on plaintiffs to show that his protective conduct was a contributing factor in the unfavorable personnel action. The burden then shifts to the descendant to prove that it would have taken the same unfavorable personnel action in the absence of protective conduct, in essence, that it did not act with retaliatory intent. The Second Circuit held that the contributing factor element required a showing of retaliatory intent. UBS does not defend that holding, nor could it. UBS instead contends that in addition to showing the contributing factor element, a plaintiff must separately show retaliatory intent. But UBS never grappled with the plain text of the statute, which says that an action shall be governed by the burdens in Error 21. And having now disclaimed any requirements that a plaintiff show animus, UBS never explains what its proposed retaliatory intent element would amount to, other than the second step of the burden shifting framework, a showing that the employer would not have taken the adverse action in the absence of the protective conduct. I welcome this Court's questions. If you did not have the burden shifting framework, would there be an intent requirement? So, yes, Your Honor. That is, the burden shifting framework is designed to prove the intent element. Absent the burden shifting framework, the default rule would apply, and plaintiffs would just have to show intent. Well, it just seems that the substantive statute provides for but-for causation and has an intent requirement, but you're saying the burden of proof requirement seems to – framework seems to eviscerate that substantive requirement. I wouldn't say eviscerate. I would say it's how you prove that substantive requirement. So, for instance, in Title VII, the same language, discriminate because of, can either be proven entirely by the plaintiff or, depending on the type of case, Congress has sometimes said there's a burden shifting framework that comes in. You just have to show a motivating factor, and then the burden shifts. In other words – I'm a bit confused by that answer. I understand the meaning of discriminate means to treat someone differently, and I don't know how you can prove intent other than to show by action that someone has discriminated. They fired someone. They demoted someone. They treated them differently in some way. They discriminated against them. So I don't think there's any question that there was an intent to fire this person, correct? That's correct, Your Honor. And so the causation issue is not about intent, or the issue is not about the intent to fire someone. The issue is what relationship does it have to the act? That's exactly right, Your Honor. So I don't know where your answer to Justice Thomas comes, but if there wasn't this burden shifting that we would have a different kind of intent. We would still be charging people with did they fire them because of this, correct? That's exactly right, Your Honor. The question would just be who has to prove that, that the firing was because of the protected conduct or trait. The default rule is plaintiff. In this case, Congress has chosen to put a burden shifting framework in the statute that gives the plaintiff an initial burden before the burden shifts to the defendant. So the question of intent, as you said, might arise in motivating factor cases because then the jury has to find out whether this was more important or not than other reasons, correct? So that's correct, Your Honor. The analogy to Title VII is just to say that Congress is entitled to come up with different schemes to prove the same thing, namely that the employer took the adverse employment action because of the protected trait or conduct. What do you think contributing factor means? Because I think both sides' positions have difficulty hanging together completely because of the interaction of contributing factor and, as you call it, step two. At least for me, that's trying to figure out how those fit together. So what do you think contributing factor means? So, Your Honor, I think the simplest answer is that it's a term of art drawn from the Whistleblower Protection Act. And for a generation, the definition adopted by the Federal Circuit has been a loan or in combination with other factors affects the adverse employment action. In your brief, I think on 29, you said that knowledge by the employer of the protected activity plus temporal proximity would be good enough in this particular statute to show contributing factor. Is that correct? Yes, Your Honor. So that's actually in the text of the Whistleblower Protection Act, right? It's the first time Congress uses this contributing factor language. So they give an example of what would suffice, and they say knowledge plus temporal proximity. So, again, what you've got at that point is protected conduct, so someone had objectively reasonable evidence of securities fraud and reported it. You've got the fact that they were fired. You've got the employer's knowledge, and they were fired shortly after reporting objectively reasonable evidence of securities fraud. Yeah, that's a sensible scheme, I think. I'm not sure it maps completely onto the term contributing factor, but I understand where you're getting that as a term of art. That's right, Your Honor. Again, in the Whistleblower Protection Act, Congress explained what contributing factor meant. Subsequently, it didn't put that explanation in the statute, presumably because in future statutes it thought that term was adequately defined. As I understand your argument, discriminatory intent plays no role whatsoever in what the plaintiff must prove. So that's right, Your Honor, that the plaintiff can get the burden to shift without showing discriminatory intent, although I think what Congress believed is that at the point where you've shown this protected conduct, temporal proximity, and adverse action, there's something like a presumption, as the SG put it, of intent, and that's why we shift the burden. So let's say that an individual engages in protected activity, an employee engages in protected activity, and as a result of that, the employer investigates the employee's performance and finds that the employee actually has embezzled $100,000. The plaintiff would not have to show that the decision to discharge was based in any way on the motivation, the thinking of the decision-maker was based in any way on the protected activity. That would be up to the employer then to show by clear and convincing evidence that the person would have been discharged upon the discovery of this, even if there had never been protected activity. That's your argument? So, yes, Your Honor, that is obviously a step to the employer wins because they can show anyone who embezzled $100,000 would have gotten fired, whether or not they'd engaged in protected activity. But that's right. Congress believed that employees shouldn't have to have evidence of what was in the head of the decision-maker at the moment of the decision before the burden shifted. The key language in that part of the statute is that the protected activity was a contributing factor in the unfavorable personnel action alleged in the complaint. So you read unfavorable personnel action to mean simply discharge, but can it not also be read to mean discriminatory discharge? The unfavorable personnel action alleged in the complaint is the discriminatory discharge. So I don't think so, Your Honor, and that's because that would render the contributing factor language superfluous. That is, if you were to say, if you were to prove as part of it that there was a discriminatory discharge, what would it, once you've shown there's a discriminatory discharge, by definition the protected conduct was a contributing factor. In fact, you've shown a much higher standard. No, I don't quite understand your, I don't understand that answer. Could you explain it to me again? Sure. So if an employee has to show discriminatory discharge, that means they have to show that the employer was motivated and would not have taken the action. No, it doesn't mean but for. It means that it played some role in the discharge decision, was a contributing factor to the discharge decision. So if Your Honor's question is whether the contributing factor has to be to the decision rather than just some part of the causal chain, I'll just say that I don't know that this case is exactly the right case to draw that distinction if there's something below retaliatory intent. Remember, in this case, during the jury deliberations, there's a second instruction given that uses affects the decision. That's the language. This is a JA-180. And so if this court thinks there's some lesser showing than retaliatory intent that has to do with affecting the decision versus just being part of the causal chain, this case wouldn't be the right case to make that determination. But doesn't it – don't you have to do that if you're going to show – if you're going to rule out the hypotheticals that UBS raises and the ones that the Chamber of Commerce did in its amicus brief, things that happened in the causal chain, like the whistleblowing alienates the customer, the customer takes her business elsewhere, and then the department is eliminated. And so even though the employer was very supportive of the whistleblowing, she loses her job because there's no work left. I took your reply brief to say, no, no, no, no, no, no, that wouldn't happen. Is it your position that those kinds of hypotheticals only get ruled out at step two by the clear and convincing evidence standards? Or, as Justice Alito is saying, if you have to show some sort of link between the discharge and the decision, it seems like some of them might get ruled out at the first step. So I think that's right, Your Honor. There's two responses. The first is Murano in the Federal Circuit, the case that interprets contributing factor, seems to say those cases get to the second step. So in that case, the fact pattern is whistleblower reports. As a result, the employer cleans house, fires everyone related to this unit, and the plaintiff is discharged as part of that. And Murano says because there's no requirement of retaliatory intent at the first step, that gets to the second step. If the employer is telling the truth that they were just cleaning house, But that's not the hypothetical. Could you address in the hypothetical where the employer is grateful for the information, cleans house, and the customer leaves. So it's not cleaning house within the employer. I might not have been clear. Do you know what example I'm talking about from the brief? Yes, Sarah. Sarah, the Sarah example. That's right. So our position is that that is resolved at the second step because the employer at that point can show that they would have fired the plaintiff even if the customer had left for a different reason. But why couldn't it be resolved in part at the first step? Because you have to show that it's a link to the decision, a contributing factor, not substantial. You don't have to show motivating, but it played a role in the decision, even if not a determinative one, some role. And I don't want to fight you too hard on this because, again, in our case there's an instruction that says effective in decision. The way we write the opinion affects other cases too, obviously. Sure. So I take it that is not what the Second Circuit meant by retaliatory intent. So we at least have to reverse the Second Circuit, right, because the Second Circuit required some sort of animus showing. It did not believe that the instruction at JA180, which says affected the decision, was sufficient. But if your honors decide to write an opinion that says affected the decision, I think that's not quite consistent with Murano and the definition there, but it's certainly an interpretation of the statute we'd be comfortable with so long as you don't say there's some higher showing than that. What do you mean by animus? We use that term a lot. We toss it around. What does it mean here? Does it mean something different than some sort of discriminatory intent? So, yes, Your Honor, this Court has distinguished between discriminatory intent, which simply means you want to treat someone differently on account of or because of the corrected trait of conduct, and animus, which is sort of like you have a bad motive in your heart. And so this Court has routinely said that in discrimination statutes there's no requirement to show animus. And, indeed, I think UBS disclaims any animus requirement. Counsel, that's where I want to pick up, and so I'm sorry for interrupting, but I wonder, is that enough for the day? The Second Circuit opinion can be read in various ways, but one of which possible reading is, in addition to an intent to discriminate, you have to prove a further intent or a motive to retaliate. And we've rejected that in the Title VII context many times, saying you may have a further intent of trying to equalize men and women as groups. You may have a further intent of wishing to discriminate on the basis of motherhood. Irrelevant. Intent to discriminate is enough for the day. Could we simply say that and not get into how the statute overall works, which seems to me to raise a bunch of other questions that may be more than we need to do for today? But react to that. So I think that's correct, Your Honor. I think that that would be enough to reverse the Second Circuit. I think you may have to address UBS's position, which is that contributing factor means what plaintiff said it means, but there's some sort of separate freestanding retaliatory intent. That's what I'm saying. We would reject the idea that there is a freestanding further intention or motivation requirement and say it is simply discrimination, intent to discriminate. That's all that's required. Vacate remand. I think that's right, Your Honor. Contributing factor doesn't require some sort of animus showing. There's no separate freestanding retaliatory intent element, and whether contributing factor means effect. Period. Period. Would period be okay there? Would that be okay there? Period would be okay with us there. You probably need a little more. Can I ask you one more on that? Go ahead. In your brief, you said that if the court disagrees with the Second Circuit, which is what my colleague is suggesting, the proper course would be to remand for consideration of whether the jury was adequately instructed. In your reply brief, though, you say that we should reinstate the jury verdict and remand only for proceedings on your cross-appeal. So which is it? We think that it would be proper to reinstate the jury verdict because we think that what you should do is say that contributing factor is a term of art that tends to affect in any way. If I have problems with that language, and I think that that's what some of my colleagues are alluding to, which is I know the Federal Circuit has adopted it, but we haven't, and in your brief, you don't actually use that language. You go around it, and I think there's reasons for that, but that's not the definition of contributing factors. You say it's something that helps bring about. I think that is a better formulation. So why don't we just remand and let the Second Circuit think about  So two responses, Your Honor. First, I just want to note that for this to be a term of art, this court doesn't have to have decided. So, for instance, in Helsin, similarly, this court relied on a Federal Circuit case to conclude that something was a term of art. I just want to make that clear, that you can conclude contributing factor is a term of art without having a Supreme Court decision. Well, there were a lot of reasons for that, not the least of which is that Congress did tend to adopt it as a term of art, but not in this case. They created this term of art. That's right, Your Honor. The Congress did. So, well, put it that way. So that's my first-line answer. The second-line answer is, even if you conclude that you're not sure about the tends to affect in any way jury instruction, remember there's a second jury instruction in this case that it affects the decision. Someone with knowledge, because of that knowledge, affected the decision. And so if you conclude that's the right formulation, then I think you can still. Thank you. Thank you, Counsel. Normally in the law, in these types of cases, there is a distinction between liability and causation. In a car accident, you're speeding in a car and injured the person or allegedly injured the person. Speeding is liability, right? Whether that has resulted in an injury, whether it's caused it, is a different question. Now, your position merges those two, right? You don't separately look for liability and causation. So I think there are two different types of causation we're talking about here. So for liability, yes, you have to show you acted because of the protected activity. There's still the causal connection between what the employer did and your damages, right? There's a separate causation inquiry that looks more like the speeding example you gave, which is given that the employer suspended or demoted or discharged, what damages is the employer liable for? So causation comes in again at that step. But I think in every discrimination case, right, this is EEOC versus Abercrombie, the core question is did the employer take the action because of the protected trait or conduct? Well, that's causation. And I think your friend on the other side draws the sharp distinction between liability and causation. And your position is that there is no distinction of that sort? So I'm not sure my friend on the other side has an example. Having disclaimed animus, it's not clear what discriminate would mean other than acting on account of or because of. And this is again an EEOC versus Abercrombie. This court interprets the term discriminate and says it's got three parts. You've got to show adverse action because of protected trait. Now, because of in discrimination law, it sort of merges causation and intent because the forbidden intent is to act because of the protected trait. Thank you. Justice Thomas? Justice Alito? Justice Sotomayor? Justice Kagan? Ms. Anand, on page 5 of your reply brief, you note that the, this is what you say, the United States offers two additional persuasive observations and then you describe the United States' position. Two additional persuasive observations. I would have thought that the United States' position is either in conflict or at least in tension with yours, so I was wondering if you could explain to me why you think that's not so or whether you really think it is so. So, Your Honor, I think the differences are semantic. That is, both we and the United States agree that all you have to do is run through the burden-shifting framework, step one, contributing factor, step two, and then you end up with isolating those employers who engage in discrimination. Whether it is, as the United States says, because after step one there's a presumption that can be rebutted by the employer or whether it's, as we say, because after step two the employer has not been able to show a lack of retaliatory intent, I'm not sure it matters, right? That's a semantic distinction. The point is you get through both steps. You're saying there's no practical difference, but the sort of analytic way that the argument spools out is different. I think that's right, Your Honor, but again, because the jury is always instructed on both steps and the plaintiff has to win on both steps, I'm not sure it matters. Justice Gorsuch? Justice Kavanaugh? Just on that tends-to-affect language that Justice Sotomayor is asking about, I want to make sure I have your answer. Your answer is that we don't need to address that because the follow-up jury instruction after the question was raised by the jury didn't use tends-to-affect? That's correct, Your Honor. And again, the Second Circuit's holding was based on this requirement that there be some retaliatory intent component, so as long as you don't agree with that, as between the two jury instructions, I'm not sure this Court has to make a decision. And then going back to my original questions about knowledge of the protected activity and temporal proximity, and you said that's basically what it means. That's what you said in your brief. Do jury instructions, however, usually define contributing factor in that way? No, Your Honor, and that's because in the Whistleblower Protection Act, it's illustrative, right? It's a such-as. This shall be sufficient. And so the jury doesn't necessarily need to find those two elements. In virtually every case, that's how it's proven, right? That's the sort of standard way that plaintiffs prove their case, but it's illustrative, not exhaustive. But I think as the jury here had confusion, lots of juries probably have confusion trying to figure out what contributing factor means before they do step two. Is that not your understanding from reviewing cases of this sort? I don't think so, Your Honor. That is, remember, again, you've got to show protected activity. Someone reported fraud. You've got to show retaliatory discharge. In almost every case I've seen, the plaintiff's also showing knowledge by the employer, and so the best way to establish a causal connection between the protected activity and the discharge is to show that it happened pretty close in time. That is, most juries don't believe there's a causal connection if someone's fired a year or two after they report protected conduct. Thank you. Justice Barrett? Justice Jackson? Can I just clarify? Way back at the beginning, perhaps in your introduction, you talked about discriminatory intent, and so I'm just trying to understand, do you believe that there is an element of intent at work here and it's being taken care of by the burden-shifting test, or intent is not an element at all in this framework or in this area? So we believe that Congress designed the burden-shifting framework to address discriminatory intent. But you have to have it in order to be liable for this, but you've defined it as the employer taking the action because of protected conduct, not some sort of animus or something like that. That's exactly right. So properly understood discriminatory intent is basically exactly what the second step of the burden-shifting framework shows. Thank you. Thank you, counsel. Mr. Yang? Mr. Chief Justice, and may it please the Court, the Second Circuit held that SOX requires retaliatory intent, which the Court determined to mean prejudice and conscious disfavor of the employee because of whistleblowing. The Court also stated that that interpretation was identical to its interpretation requiring proof of discriminatory animus in the railroad safety whistleblowing context. That holding, which exactly tracked respondents' arguments, is incorrect. First, the term discriminate against means differential treatment that injures a protected individual. That has the same meaning as in Title VII, and this Court's Title VII cases make clear that discrimination does not turn on such motive or animus. All that's required is the decision to treat differently be made because of the protected activity. Second, Congress directed that SOX claims be adjudicated using Eric 21's burdens of proof, which requires proof that the protected activity, not retaliatory intent, was a contributing factor in the employer's decision. That simply requires that the protected activity played a part in producing the decision. Mr. Yang, is there any difference or daylight between your position and Petitioner's position? I believe there is, and maybe I can help illustrate this with looking at three different options to look at. One is a pure chain of causation type of an approach, that if you set a domino in effect and it ends up in a retaliatory decision, even if the decision didn't consider the first domino, that is, the retaliatory intent, or the whistleblowing, that chain of causation is enough. And I think that goes to the hypothetical, Justice Barrett, that you were asking about. That's not our position. In fact, that was a prior problem, chain of causation that the ARB reversed course in 2019 in the Thorsen and Yoel cases that we cited in our brief. What now the approach is, which we think is our position, which we think is right, is the contributing factor requires proof that the protected behavior itself was a factor that played a role, not necessarily a determinant, but just a role in producing the decision. That can be proven inferentially through causal temporal proximity and knowledge, but the ultimate question that the jury has to find or the fact finder has to find is it had some role. In the decision-making, in the adverse decision. In the decision. So that does not occur if the decision is based only, for instance, on the employee's misconduct, even if the misconduct was revealed by a chain of dominoes that started with the whistleblowing. No, I understand that, but that reads discriminatory intent of some kind into the final factor that the employee plaintiff must prove. I think that is right. If we only looked at the prohibition, we would probably agree a lot with the respondent here, but Congress has told us how to adjudicate that question, and let me illustrate it. You're losing me. I understand Petitioner's position that no discriminatory intent need be proven by the employee plaintiff, but what you just said a minute ago was that some species of discriminatory intent is inherent in what the employee plaintiff must prove. Right. Right? Yes, but the way you prove it is by proving that the protected activity was a contributing factor, that is, it played a role in the decision. So let me explain. There's been a debate about causation and intent and how the two are separate, but in this context, I just want to understand, what is the difference between that position and the position of UBS in the Second Circuit? They said that they wanted an instruction that says there has to be discriminatory intent, and you just admitted that there must be some proof of discriminatory intent. Their position goes further. They call it retaliatory intent, and retaliatory intent, they mean animus, and animus is some kind of desire to harm because of. That is not required. Secondly, I think their position just doesn't work on the table. If you discriminate against somebody because that person engaged in protected activity, are you not retaliating against that person because the person engaged in protected activity? I don't think you would say that you're retaliating all the time. For instance, in the employers, there are instances where the employer goes, we've got a whistleblower, I want to protect the whistleblower, I'm going to move the whistleblower to a different shift, different responsibilities, because I'm concerned that other people might take action. That good-hearted employer is still discriminating on the basis of the whistleblowing. So also there's a distinction. Can I just, is the response to Justice Alito, is the key to it the definition of retaliatory intent that Petitioner just put forward? In other words, I understood her presentation and that argument to be that discriminatory intent is taking an action because of the protected conduct. So if that is the definition, then haven't we solved the problem of there seeming to be a discord in the way that Justice Alito points out? I think that would be discriminatory intent, retaliatory intent. Yes, discriminatory intent. We definitely agree with that, but let me explain the burden shifting, because I think this is relevant. In this context, intent and causation, although they often are different concepts, they merge. The intent underlying the decision, that is the reasons for the decision, and what caused the decision to be made, is exactly the same, because the decision-maker's reasons are the cause for the decision. That's why when you look at the burden shifting scheme, it asks, did the protected behavior play a role in and produce, which is a contributing factor, the decision? It's a real low bar, and you can prove it circumstantially. If so, even if it wasn't the but-for cause of the decision, it is enough intent to be shown here, that you're treating them differently, that you go to the affirmative defense, which makes sense, because the employer has more information about the decision. Same question I asked Petitius. What if we simply said, you're correct that retaliation as a further motive, we talk about motives, you talked about animus, really it's just a further intention beyond the intention to discriminate, is not a thing under this statute? And to the extent the Second Circuit thought it was, it's mistaken. The question is whether there was discrimination. Period. I think the court could issue that decision. I think it would leave a lot left to be decided. Oh, my goodness, yes. But I'd also think it doesn't... That's sometimes a bug and sometimes it's a virtue. Exactly. But here I don't think it's that hard. And let me just make another run at the distinction between intent and causation. Before you do, though, you agree that would be an acceptable place to stop. Oh, I'm certain if the court wants to do that, that is an acceptable place. We're not going to fight you on that. How about it? But I think, though, that the respondent's position just doesn't work on the text. Retaliatory intent has to be a response to the whistleblowing behavior, just by nature of the concept of retaliation. So if the adverse action is taken with retaliatory intent, which they say has to be shown, then the whistleblowing will always be a contributing factor. And if that's true, you've made the contributing factor inquiry superfluous, and that's just not right. Congress sought in the contributing factor standard, and this goes all the way back to the WPA and Mt. Healthy. If you look at the way that the court has analyzed these employment decisions, there's been a burden-shifting scheme. Congress tweaked it to lower the standard to a contributing factor, and it did so because intent and causation here are really the same thing. Counsel, would it be enough at the first stage to show temporal proximity to the adverse employment decision? It would be enough for a decision-maker to make a finding. There's a distinction between... Not enough reliability. I just mean, would that be sufficient to carry the employee's burden? It might be, but not necessarily. Plus knowledge, right? Yeah, plus knowledge. There's a difference between the evidence that you use to prove the fact that you have to prove, and I think your question goes to the evidence. Sure, because knowledge is a separate element. I'm only talking knowledge and the fact that engaged in public protected activity, all that is separate. Once you get to that shifting... What the government's position is is what the fact-finder has to find is that the protected activity played a part in producing the decision, right? That's what the fact-finder has to find. Right. The way you prove that, you can prove that and allow an inference to be made of the ultimate finding by saying knowledge and temporal proximity. And frankly, that's no different than when true intent is involved because if someone's factual theory in a Title VII case is, this person hates me because I'm of this protected trait, and you show that you have that protected trait, and you show that, you know, that decision and the adverse action are in close temporal proximity, knowledge and... That's a way of proving intent. It's not unique to this contributing factor context. It's just true generally. So when you say not necessarily, maybe it could be the difference of, you know, how long the temporal... or how great the temporal proximity is. Like, hey, listen, if it was within two weeks of discovering about the protected activity versus six months. And other things. The fact-finder has to look at all the evidence when making this determination of contributing factor. So the fact-finder may say, oh, you know what? There's really good documentation of your misbehavior and all these other things, and if the fact-finder can find that the misbehavior was the only reason and that there was no contributing... And can consider that at step one. At step one. That's, I think, a big difference between our position and petitioners'. Thank you, counsel. Justice Thomas? Justice Alito? How do you root your interpretation in the language of the statute? So was a contributing factor in the unfavorable personnel action alleged in the complaint? Does unfavorable personnel action alleged in the complaint mean simply in a discharge case, discharge, or does it mean discriminatory discharge? I'm not sure it ultimately makes a difference because the first part of the sentence, that is, the protected activity has to be a contributing factor in the employment decision, goes to the question of discriminatory treatment, right? This is the discussion that we've had now about intent and causation. I will say that as alleged in the complaint, this is on page, I believe, 13A of our brief, but if you look at what has to be alleged in the complaint, it is discharge or other discrimination by the person in violation of the provision. So you'd also have to show that that person is, for instance, a company with securities that are publicly traded. That's part of the adverse action inquiry. I don't really understand the answer. Ultimately, it is the... The employee plaintiff under this scheme has to show that protected behavior, any behavior described in paragraphs one through four, was a contributing factor in the unfavorable personnel action alleged in the complaint. So unfavorable personnel action alleged in the complaint could be read to mean the discharge with no intent requirement or it could be read to mean discriminatory discharge because that's what is prohibited by the statute. Doesn't it have to be one or the other? I think it's more the latter. It's the latter. Sorry, the former. It's the discharge. Because discriminatory, all that means, the discriminatory means differential treatment because of the protected activity, and that's what this sentence is getting to. Well, if that's how you read it, then I don't understand your answer about how discriminatory intent figures in this at all. It seems to me then you are taking exactly the same position as the petitioner, but I must be missing something. Hmm. I think there's some daylight between us, and I think the reason is that we think that when you ask whether it was a contributing factor in the unfavorable personnel action, the thing that has to be a contributing factor has to be the protected behavior itself, not some chain of events that gets to the ultimate outcome. Thank you. Justice Sotomayor? I may be confused because I don't know that I understood the other side to be saying anything different. I think that's probably best addressed to the other side then. All right. I think this case is a little confusing. I do think that if you take a look at the three options, chain of causation, our position, and then retaliatory intent, which, again, makes the contributing factor increase superfluous, I think that helps to clarify, and you could ask the parties what their views are on those three. Justice Kagan? Okay, Ms. Anand, when you get up. I thought that you were saying the exact same thing, but you'll tell me if that's incorrect. Let me ask you, Mr. Yang, when Justice Gorsuch gave his relatively bare-bones disposition and you said, well, that leaves a lot on the table. You know, I wouldn't say you couldn't do it. Of course you can do it. Happy if you're overturning the Second Circuit, but it leaves a lot on the table. Could you tell me what it leaves on the table and why you think, whether you think there are any reasons not to leave those things on the table? Well, I think maybe my exchange with Justice Alito may reflect that. I mean, it's one thing to say that retaliatory intent's not required because, you know, retaliation is not required, it's not the same, you know, you don't have to take this act to injure someone else. That's one thing. And it solves the way that the Second Circuit decided the case. But it does not answer, well, is discriminatory intent required? And what does that mean? And what, you know, how do you prove that? How does that relate to the contributing factor burden-shifting scheme? And so I think that might forestall another need to address this issue, but it's pretty minimalist. I don't want to fight you if that's where the Court sits. I don't want to fight you on that. But I think what that may mean is at some point in the future we have to- Have this conversation all over again. Maybe. Justice Gorsuch? I don't think anybody wants to have this conversation all over again. I certainly don't. However, this is our first look at this statute, and that's normally a reason to be careful. And I guess I'm just not sure what exactly you think we would be leaving seriously awry if we were to take this narrow approach that Justice Kagan and I have been asking about. What would be the danger of taking that approach? I'd like to understand it. Well, the danger, I think, is simply that there's no-you're not going to err in going that route. The question is- Well, that's good. That's a good- The question is whether you're leaving on the table, right? Yeah. What is it we're leaving on the table that you think we really need to clean up today? What you propose, I believe, is simply interpreting 1514AA. Like, let's ignore the burden shifting and just look at what this prohibition means, right? And it doesn't mean retaliatory intent. That was the QP on which we granted the case. That is- That's true, right? It is certainly true, but the whole-like, the way these cases are adjudicated is through the burden shifting scheme. That's just as a practical matter how these cases are adjudicated. So-and, again, I don't want to fight Justice Gorsuch on this. I'm just saying- Well, what do you want me to say about the burden shifting regime that's going to be intelligent and useful and surely correct? Well, I think what you could say is that the contributing factor requires that the protected behavior, not intent, right, because it's a means of inferring intent, that protected behavior was a contributing factor, which means it played a role in producing the decision, right, and that that's all that you need to show, and then the burden shifts to the employer to make out its affirmative defense. I think that would go a long way in solving some of the issues that come up. You could also, if you want to, say that's not a chain of causation type of inquiry, but, you know, again, I don't want to step on the Court's prerogatives about how it writes its- No, no, no, I appreciate that. Thank you very much. Justice Cameron? Well, to follow up on that, the reason you think retaliatory intent is not part of the employee's burden, as I understand it, is in part because Justice Gorsuch says it's not there, but that's confirmed or underscored by the fact that it's Step 2 of the burden shifting framework that gets at retaliatory intent. Is that not- I think that's true that the Step 2- Or is that not right? No, no, no. Step 2 can address two types of circumstances. One, the employer can say, look, taking our decision as a given, like, we wouldn't- like, we would have reached the decision the same way, but it also allows employers to do something else, which is the employers can say, yeah, we had a bad actor as supervisor. The guy fired the employee because of the protected activity. He hates whistleblowers. But, by the way, we also had a risk going on that was completely independent. We would have gotten to the same way-same result. So there's two things, and the employer can prove that, too. So the usual case-correct me if I'm wrong-is going to be where the person made a report of wrongdoing, protected activity, and the employer says-and the person gets fired-and the employer says, we fired them because they were a poor performer, because we're doing a reduction in force, because they were embezzling, and not because of the protected activity. And then the jury has to weigh, is the employer telling the truth or not, which is exactly what the closing arguments in this case were. I think that's exactly-that, I think, is the typical case. Okay. Justice Barrett? How does your articulation of the contributing factor test rule out the chain of causation? You said, has some effect in producing the decision? Yeah, and I think you actually have to say-look also at the text-and say, when Congress talked about a contributing factor in the personnel action, they're talking about the decision to take that action. Right. And that requires that they actually consider the protected behavior, not something that was caused by the protected behavior in a long chain that could be quite tenuous. Okay. And just one other question that goes to Justice Gorsuch's point about how much we need to decide. Do you think that there's a risk that if we only say, listen, there's no extra element of retaliatory intent required and we say nothing more, that it would leave open the possibility that lower courts would say, ah, okay, I guess that just means, you know, chain of causation? Like that it would send a- I don't know that the courts are inclined to go that way at this point, now that the ARB has corrected its position since 2019. You never know. You know, I think if you look at the excellent briefing in this case on both sides, including the amici, I think there are a lot of questions to be raised. Some of them are more central than the others. And so, you know, again, I would leave the court to decide what's best to do in this case. Justice Jackson? So isn't the real risk of not going farther that it leaves open the possibility that courts will think there is still something more to do than the burden-shifting test? And I think the reason why that's kind of happening is because as I read the respondents' brief, they have separated causation from intent. And they suggest that the burden-shifting goes to something called causation in this world, and that that doesn't cover intent, which is why whether you have-whether the level of that intent is retaliatory animus or something else, I think if we just eliminate retaliatory animus, there's still the question of is there this intent element outside of the burden-shifting. And my understanding is your argument and Petitioner's argument is no, that the burden-shifting takes care of whatever intent, discriminatory intent, exists in this world. And so it would be a real benefit to make that clear, I think. I think the court could definitely conclude that. I think if the court doesn't address the role of the burden-shifting scheme, you likely will leave open for litigation a cogent argument made by the other side, which ultimately doesn't work, because I think- Well, let me also give you the opportunity to answer that question directly, because what I'm struggling with is trying to understand how causation and intent are different in this world. When you're talking about the reason, I guess, for the persons having been fired, whether you say it as, you know, employer, what caused you to fire this person, that's causation, or employer, why did you fire this person, that's intent. It seems to me they both get at the same thing. So can you respond-you've said a couple times they're different, and maybe you can help us understand why that's the case. Oh, I don't think I said generally these- Oh, they're not different. They're not different, and they are the same. And, you know, again, it's the intent underlying a decision are the reasons for the decision. And when you ask what caused the decision to be made, it is the same thing, because the decision maker's reasons are what caused the decision to be made. So I think in this particular context-and I think this is reflected- if you go back to Mount Healthy, right, it talks about a rule of causation, but it's talking about the decision, right? It's all over. Page 3 of our brief just goes through, and you can see how many times the word decision comes in. That was always the case. When the WPA language was adopted, Attorney General Thornburg said, look, this contributing factor language says you have to contribute to the decision. And when the MSPB's regulations were issued, it has to affect the decision. So this is an unusual context where intent and causation don't have a meaningful difference, and I think, frankly, the Court's decisions in the Title VII context reflect that, too. Thank you. Thank you, Counsel. Mr. Scalia. Thank you, Mr. Chief Justice, and may it please the Court. In Sarbanes-Oxley, Congress employed a phrase, discriminate because of, that has long been recognized to require a plaintiff to show discriminatory intent. It is this transplanted phrase with its rich soil that decides this case. Congress also incorporated in Sarbanes-Oxley the contributing factor standard of the Air 21 statute to address a distinct issue that this Court and Congress occasionally grapple with, and that is the causation standard in a discrimination case. But just as Congress did not eliminate an intent requirement in Title VII, when it adopted the reduced motivating factor causation test in Title VII, so in Sarbanes-Oxley it did not eliminate an intent requirement by incorporating the reduced contributing factor causation test of Air 21. Put differently, the petitioner errs by over-reading the burdens of proof provision of Air 21. That provision addresses a distinct element, causation. It does not purport to address all the elements a plaintiff must establish, not that she's a covered employee, not that her employer is a covered employer, and not that she was separated with retaliatory intent. Finally, petitioner and the government err in relying on the Whistleblower Protection Act of the WPA. That law lacks the discriminate because of language which frames this case, and indeed Congress removed the phrase that the action had to be taken as a reprisal for protected activity. For these reasons and others, petitioner cannot overcome the strong presumption that discriminatory intent is plaintiff's burden in a Sarbanes-Oxley retaliation case. I welcome the Court's questions. Mr. Scalia, the petitioner indicated earlier that you could use a motivating factor to demonstrate an unlawful employment practice under Title VII, and contributing, I think her analogy was that the contributing factor here, the contributing factor test here is similar to the motivating factor under Title VII. How would you respond to that? Justice Thomas, I agree that the Title VII framework is a framework very similar to the framework that we have with Sarbanes-Oxley in Air 21, a much closer analogy, by the way, than the Whistleblower Protection Act, which we heard relatively about today. But, as I said, there was an intent requirement to Title VII before motivating factor was added, and there remains one now, and it does not arise from motivating factor. What this Court said in Nassar is that the motivating factor test does not add a substantive bar. Rather, it defines the causation standard for a violation defined elsewhere. Same thing here. The violation is described in Sarbanes-Oxley. Sarbanes-Oxley looks over to Air 21 solely for causation. There's no way that that Air 21 provision could carry the weight the petitioner wants to give it, as I mentioned in my opening. It leaves out elements of a Sarbanes-Oxley case. Where in the statute does it say causation? I'm sorry. You say it looks over to pick up or reference causation, and I guess I'm trying to understand why you're saying that, because it doesn't seem to suggest or say that that's what it's doing. Justice Jackson, I think it's widely recognized by the practicing bar that this is a test of the causal role that's played. I believe that is the positioner's position as well, but it's a reduced causal test. How is that different than intent? Tell me what is different about a determination that the adverse action was caused by the protected activity and that the protected activity was a contributing factor or was intended because of the protected activity? Justice Jackson, this Court's case has recognized that the discriminatory intent required under Title VII and others from the laws in causation are actually importantly distinct. Now, I would concede there are times when the evidence used to establish causation will also be evidence used to show intent as well. But take, for example, this Court's decision in Babb v. Wilkie a few terms ago. This Court held that there could be discriminatory intent and liability for it under a special provision of the age discrimination law applicable to federal workers with no causation. The Court gave an example of a manager that has to make a promotion decision, rates one worker a 90, rates another worker an 85, and then, because he doesn't like older people, rates the younger worker down to an 80. But that's animus. Are you saying that animus has to be a part of this? Is that what you mean by discriminatory intent? No. We are not saying that animus is necessary, but we are saying that differential treatment for intentional reasons. The way this Court defined it in Staub was to intend for discriminatory reasons that the adverse action occurred. This Court called that the scienter that's required. So in the Wilkie, in the Babb v. Wilkie case, this Court said there was discriminatory intent, even though there wasn't causation because the older worker already had a lower score. So is that what you would contemplate? I'm just wondering what kind of proof you would use to show intent that would be different than the causation burden shifting framework. You would say that the employee has to show that the employer harbored some sort of discriminatory intent with what evidence? How do you show it? Sometimes it will be the same evidence that's used to show cause, but other times there's evidence such as I made a complaint and my boss had a very angry reaction or I made a complaint and immediately afterward there was a lot of hustling about among the managers and I could tell that they were angry or my manager immediately began treating me differently. There often is additional evidence of intent. And let me again, a question that's been presented here is how much would we disturb the waters if we were to sort of glom together causation intent? My answer is immensely. I don't understand that, Mr. Scalia, because everything that you just said, that seems to me exactly the question that the burden shifting mechanism is all about. The employee comes in and says, it says all of those things. I made a complaint and then terrible things started happening to me. And the employer says, no, not at all. I mean that these terrible things had nothing to do with the complaint. It was because you were a terrible worker or because you embezzled money. So all of that is exactly what the burden shifting mechanism is designed to suss out, and that's exactly the way you just explained what your intent requirement is. So at that point, I guess I just don't see what one is doing differently from the other. And again, there often can be overlap in the actual evidence required, but in terms of the impact for the case, it's very important. Take, again, the Staub case. This was the cat's paw case. You had retaliatory intent on the part of the immediate managers. It had some sort of remote causal role, but this court very carefully looked both at intent and at causation, each as elements that had to be satisfied. That is fundamental to the discrimination law. That's just saying that even with this intent to discriminate, you might fall below the threshold at which the intent matters, right? And then the question is how much, what is a contributing factor and how is that different from a motivating factor? Are you saying you took the decision exclusively because of the prohibited reason or partly because of the prohibited reason and if partly, how much because of the prohibited reason? So those questions would have to be answered, but it's still the exact same question. There's no here's where we have intent and here's where we have causation. Your Honor, where I begin is that the discriminate because of language, which is language this court has recognized for time immemorial requires discriminatory intent, an intent element, and then causation must be established too. The petitioner has argued, she began petitioner's counsel by saying that this was how to handle claims that somebody acted with retaliatory intent. Her argument is that gets determined at the second step, but that's simply not true. She has admitted in her brief that retaliatory intent actually doesn't necessarily get discerned at the second step because an employer that did have retaliatory intent, but nonetheless would have separated the person anyway, wins. That's the old Price Waterhouse case. On the other hand, an employer that lacked retaliatory intent can still lose at that second step. So Justice Campbell, many, many different ways. First of all, the Halliburton case is a Fifth Circuit case, an old Fifth Circuit case that plaintiff cited as establishing the circuit split here. The protected activity there was the employee complained within the company. He then complained to the SEC. The SEC told the general counsel we're going to be conducting the investigation, at which point the general counsel, as the general counsel does, sent out a notice to employees to retain documents. What he said was the SEC is investigating Mr. Menendez's allegations. This is the employee. Mr. Mendez said that hold notice was retaliatory action because it made my colleagues angry that I had said they were violating the law. And so that was the protected activity. If that employer is forced to prove without any prior showing of intent that it would have set out the hold notice anyway, that's impossible. It sent out the hold notice for what were quite possibly very good faith reasons because the complaint was made. Or another example. These things happen. An employee, lawyer at a company, complains to the SEC and woven throughout his complaint is privileged, confidential information. The employer says I do not want to be represented by a lawyer who discloses my privileged information to the SEC. I'm going to have to let you go. Those things that employers not going to be able to prove that he would have done the same thing. Absence the complaint to the SEC because it was the complaint to the SEC that disclosed privileged information, which for innocent good faith, non retaliatory reasons led to the separation. And then finally, because this is important, too. There's a long series of cases now under the first of the Federal Railroad Safety Act where plaintiff makes a complaint. There's an investigation. It's found that actually the plaintiff engaged in misconduct at some point and he's let go. And those cases were being forced to go to the second step. Employers sometimes weren't able to meet it. And the courts eventually realized this doesn't work. This chain of causation. And they introduced an intent element to discipline it. But why wouldn't the government test in your example about the revealing privilege, privileged information? Why wouldn't the government has to take care of that? Because the government said, no, a chain of causation isn't enough. It has to be a contributing factor to the decision. And there the decision, the contributing factor was the revelation of privileged material, not the complaint itself. Justice Barrett, that sounds like intent to me. That sounds like you're getting inside the heads of the decision makers. But at the burden shifting stage. Right. Not independently. So maybe I'm just confused about your position. I thought your position was that there was an independent element of intent that was separate and apart from the burden shifting framework. Is that right? I'm saying that one thing that needs to be established in order for the burden to shift is that there was retaliatory intent. The and in response to Justice Alito, I believe a question that you are asking, Air 21 refers to whether the protected activity was a contributing factor to the unfavorable personnel action alleged in the complaint. If you go to Sarbanes-Oxley, the unfavored personal personnel action alleged in the complaint is under Section one taken with discrimination. So the contributing factor has to be contributing to an action that has that discriminatory intent. Mr. Scalia, if I let me let me see if I understand it and tell me where I'm going wrong. As you read the statute, there has to be mens rea and causation causation established through this burden shifting mechanism only. And you read that because discriminate because of this traditionally had a mens rea requirement in it. Title seven and a whole bunch of other statutes. The other side says in this particular new novel regime, those two are collapsed into the causation requirement. So far, so good. I think that's accurate. Oh, Captain Scorsese. The one thing we can maybe all agree on, though, is that whatever mens rea requirement is an intent to discriminate and not with a further motive or further intention of retaliation. One could intend to discriminate for benign reasons, for example, and in the title seven context, what some people think of as benign reasons. I want to equalize pay for men and women as a whole. One example, the court has used. Can we agree on that much that the further intent to retaliate or motive is not part of the statute? Unfortunately, no, no, no. Oh, we were so close to intent. We had two out of three to intend to require Justice Scorsese first to take the action. Now that's the base level of intent that's required even in a disparate impact case. Right. Even a disparate impact, which we say doesn't require intent, requires intent not to hire the employee, not to promote the employee. What Staub said is there needs to be intent for discriminatory reasons that the adverse action occurs. So there needs to be intent to take the action, but to do it for a reason the law prohibits. And Justice Scorsese, I think to substitute that the plaintiff needs to show discriminatory intent for a requirement that the plaintiff show retaliatory intent would just gender in confusion in a what everybody recognizes to be a retaliation case. In Lawson, which was this court's prior Sarbanes-Oxley whistleblower decision, the word retaliate was used 50 times. Yeah, but if I if I intend to treat you differently, that's my mens rea, your mens rea. Because of a protected trait. Why isn't that retaliation? And the best instruction to elicit that is one which refers to retaliatory intent under a statute which is intended to target. Why wouldn't why wouldn't why wouldn't an instruction saying if you intend to treat somebody differently because of a protected trait, you are liable? But what issue would you have with an instruction like that? I think the instruction needs to make clear that it was intended to do it for a reason that the law regards as improper. Because of an adverse reaction to whistleblowing. I intend to treat you differently because of your whistleblowing activity. Period. No word retaliate doesn't appear in that sentence. What's wrong with that? What's wrong with that instruction? How would you reverse me if I gave that instruction? Obviously, it wasn't an instruction that was given here. No, I thought about the other flaws that were given here that we think are independent reasons to affirm the Second Circuit. But, again, if you're instructing a jury about retaliatory intent in a case that's involving Sarbanes-Excellent whistleblower retaliation. I just don't see those words in this statute. I see discrimination in the statute. And I see whistleblowing activity. And I know there's a causation requirement. But I don't see the retaliation in the statute. So help me out. You're asking me to read things into the statute that aren't there. Aren't you, counsel? And, as I said, Petitioner's counsel began by describing this as a statute that requires retaliatory intent. The question presented is whether it's established that the Counsel, can I just ask you? I agree with Justice Gorsuch in the sense that I don't see certain things in the statute. But I was curious in your briefing as to why you left out the other sort of actus reus parts of the statute. You've reduced it all down to discriminate because of what you say is the heart of the statute. But before the word discriminate, we have the company may not or no company may discharge, demote, suspend, threaten, harass, or in any other manner discriminate. And the reason why I think that might be important is that if you are right that there is some sort of mens rea that relates to retaliation, I guess I at least would have thought that Congress would write this differently, right? That you would have a statute that would say one may not come up, you know, purposefully or with retaliatory intent, harass, demote, suspend, et cetera. But that's not the way this is written. So it seems like discriminate is not necessarily doing the work that, in light of the entire sentence, doing the work that you want it to do. Your Honor, the word discriminate does appear, it says, or in any other manner discriminate, which has been read to me that the others are forms of discrimination. But this court under Title VII certainly has understood that discharge is modified by discriminate, failed to promote, modified by discriminate. Our position, it modifies all. But if you need more, Justice Jackson, I would point you to subsection C, which refers to the relief that's available. And that refers specifically to the plaintiff receiving the seniority he would have had in the absence of the discrimination. This statute plainly does contemplate that all those foregoing acts are discriminatory. But you reject the view that when it says discriminate or in any other manner discriminate, that just means any other manner treat the person differently. And it's not necessarily carrying with it the kind of separate intent to discriminate. And to the extent it is there, it's in the burden shifting test as to how you prove that intent. We believe that discriminate, as used in this context, does again modify all the actions that would trigger liability. And that needs to be an intent to discriminate. That is how the word discriminate in the statute has been understood. Again, I take you to Nassar. This court's decision regarding Title VII refers to the motivating factor test as a test of causation. Intent resides elsewhere. Also remember that the finding after the second step is actually of a violation. The petitioner's position is that a violation can be found under this statute without ever having established the improper intent. Could you repeat? Both the counsel on the other side said that discrimination is simply treating people differently. I gather it's the essence of your position that that's not true? It's treating people differently in a way that is harmful to a protected individual. And additionally, under this court's cases for decades, which of course were established law when this law was enacted, it needs to be intentional discrimination. So that's our position that we don't quarrel generally with their description of discriminate itself. But we add this court has been crystal clear that that discrimination needs to be intentional. Otherwise, again, we're back at disparate impact, among other things. Well, intentional, there must be more to that term if you think that those sentences from your adversaries are wrong. Because you can intentionally treat people differently, but you think that's not necessarily discrimination. It's intentionally for discriminatory reasons, treating them differently. So you are intentionally treating them differently, but for a reason the law prohibits. That, I believe, is just ingrained in discriminate against because of language. I think that basically is ingrained in all of our discrimination statutes. They all have some requirement that a prohibited factor came into a decision and that it was there in your head when you made the decision. But what all of our decisions have recognized is that intent is a very difficult thing to prove. And as a result of that, what Congress has done, and sometimes this court has done it, has set up burden shifting mechanisms. You do this first, then we'll give you a chance to do that. Those burden shifting mechanisms are geared to trying to figure out what was in his head when he made the decision. Was the prohibited consideration in his head in the requisite way? But because that's hard to say directly, we'll shift burdens and tell different people to do different things. And that's exactly what this statute does and says that's the way you figure out whether the whistleblowing activity was in his head in the prohibited way. Your Honor, I agree with much of that, that these burden shifting schemes have been developed to get at both causation but also intent. But ultimately, both also are required as part of the plaintiff's case. I'm simply unaware of any decision under Title VII on which this was plainly framed, where intent was not also something that the plaintiff had to show. And remember, under Title VII's motivating factor, again, the plaintiff who shows that wins. Now, they may not get reinstatement or back pay, but they've won. They get attorney's fees and they have shown a violation. This statute operates the same way. It's quite unusual to think that burden shifting operates to produce that result with causation suddenly just becoming combined with intent and not simply asking the jury to make a separate claim on that point. Can I ask a question then about how this case and usual cases develop? Someone engages in protected activity or reported misconduct, and then a few weeks later, a few months later, is fired. Then the case goes to the litigation and the jury, and the plaintiff says, I was fired because I engaged in the protected activity. The employer, as here, comes in and says, no, we fired you because you were a poor performer or because we had money issues and needed to eliminate the position. Then at that point, and in this case, in the closing arguments, your counsel said, you're going to hear two different versions of events. And then Murray's counsel got up and said, you just heard a speech. It was a slick presentation for sure, but it was not the truth. It's a smoke screen. In other words, the jury had to decide between two different versions of events, which the burden was on you to show that your version was correct. But you were able to present to the jury this idea that, no, we didn't do it. We didn't intend to do it because of the protected activity. We did it for another reason. Right. Didn't that defense get to the jury? Yes, it did, Your Honor. Although the way, of course, these instructions functioned, first of all, they got there by just showing that the protected activity tended to affect in any way. Well, there was a follow-up instruction on that. But put that aside, the ultimate question was, who's telling the truth about why this person, Murray, was fired? And, Justice Kavanaugh, that's another part of the reason why the innocent employer, if forced to make that defense without a prior intent showing, may lose, even though there's no wrongful intent, because showing by clear and convincing evidence. To pick up on Justice Kagan's point, I'm sorry to interrupt, but the employer will have the information that shows, okay, we fired ten other employees as well who hadn't engaged in the protected activity for the same reason. Or, here's our list of performance ratings, and see, we fired these other people who had the same performance rating. That's how the employer wins these cases. But the employer has the information. Once you put that in, then the jury, as went on in the closing arguments here, has to figure out, is that enough to show that the protected activity wasn't the, you know, whatever the reason? Justice Kavanaugh, ideally, you have that evidence, and you put it in. But part of the problem is that often you may not, and you may not have it in a way that's clear and convincing. In a reduction-in-force case, for example, by definition, you're letting go people that you thought were doing just fine. Sometimes you're making fine distinctions. Or sometimes you don't have comparators. The person engaged in misconduct, it's pretty unusual. Yeah, I agree. You're stuck there under plaintiff's version. I agree with that. And, Justice Kavanaugh, that's another reason why the innocent employer loses under the second prong, even when there is no retaliatory intent, which is where petitioner's counsel began. And then with respect to the instruction, what the judge did was first sent the jury back to her original instruction about tend to effect in any way. And although she used words that took tend out, she still said effect any way. And there was evidence here that the employee's direct manager, who had supposedly received the whistleblowing complaint, actually tried to find him another position. So the jury could have used that to say, yeah, I guess it kind of had an effect because he heard the whistleblowing and tried to find another position. If there had been an intent instruction. Well, if the jury believes Shoemaker, I think that's the name, you would have won. Well, but if the jury had been told that it had to have been found that Shoemaker had an intent to retaliate or an intent to discriminate. Although, again, I think in a retaliation case, using intent to discriminate might be somewhat confusing, would require explanation. We're not saying animus. If the jury had been required to find that, too, about Mr. Shoemaker, not just that it tended to affect or even affected, but there was an intent. You don't think it was a reaction to prolong it. You don't think the jury instructions allowed the jury to get at that by saying issue maker telling the truth when says I'm firing or you're being fired for something other than the report. You don't think the jury that was before the jury. I think that the jury was given too easy a path to fight against UBS in the case because of the burden flip, probably because of the burden flip and because a basic element of a discrimination case. Intent to discriminate. Intent to retaliate was taken out. And for a jury trying to find agreement four days before Christmas, as was the case here, those things make a difference. Suppose you were drafting jury instructions. Part of the instructions presumably would involve the burden shifting features of the statute. What, if anything, would you instruct a jury that the plaintiff has to prove before you get to that part of the instructions? I'm sorry, Justice Alito, before I get to the burden shift part of the instruction, exactly what do you think should the jury be instructed? Walk us through that. The jury should be instructed. That's the first step. The jury should be instructed to find the elements of the plaintiff's case. Sometimes they're stipulated, but that would include that there was protected activity. That would include the contributing factor. That would also include that there was an intent to take the action for retaliatory reasons. And then there are cases that now do this because the – okay, before you get to anything about the burden shifting, the plaintiff would have to show that the protected activity was what? A but-for cause? A motivating cause? Some cause? What would you do? What would you ask the jury to decide before this burden shifting scheme entered the picture? Justice Alito, the way that is typically done, should be done, is to show that it played some role in furthering, in bringing about the adverse action. That's a proper, I think, description of contributing factor. It's not the one that was given. It's one the government has now begun using but had not been used with the jury. But not motivating. It's recognized that contributing is a lower level. But that sounds like you're working your argument about discriminatory intent into the burden shifting framework, not requiring something outside the burden shifting framework. It is outside. This is a question about the impact of the protected activity. Did it contribute? Did it further the decision that was made? Separately is the instruction to be given regarding whether there was an intent to take this discriminatory action. Thank you, counsel. Justice Thomas, anything further? Justice Sotomayor? Oh, I'm sorry. Give me the instruction. Intent to do what? Intent to have the whistleblowing contribute in some way to the firing? But why isn't that the burden shifting already? An intent to separate the employee in retaliation for or- But that wasn't the only reason. They have multiple reasons. So don't you have to tell the jury it has to be-you're right back in the circle. You're right back in the circle because you can't get out of contributing factor because it doesn't have to be the only reason or it only has to be a part reason. That's correct, Your Honor. It has to show that intent played a role, that it played a role in the separation decision. So how is that different than the burden shifting? Because it's a requirement of the intent, the mens rea, what this court called the scienter, that's basic to discrimination claims. Okay. Justice Kagan? Congress could definitely have written a statute like that that sets up here's the protected activity, it was a contributing factor, and there was the employer intended for the protected activity to be a contributing factor. It's a sensible statute, but if that were the statute, you don't need the second step of the burden shifting analysis. You've already done everything that the second step of the burden shifting analysis does. The reason why you have the second step of the burden shifting analysis is precisely to make that determination of whether the employer actually acted in part or in whole for that reason, understanding that the employer has the information, and so it makes sense to put that question on the employer's side of who has the burden to do what. But respectfully, Justice Kagan, as I've sought to explain, the second step does not discern the employer's retaliatory motive or the absence of it. The petitioner is saying that's where it's determined, but remember, the employer that has retaliatory motive can still win there, and as I've explained, the employer that lacks it can still lose. So that's not the step at which it's ascertained whether there's retaliatory intent. What's ascertained there is whether this action would have been taken even in the absence of the protected activity, including that intent. Justice Gorsuch? Justice Barrett? One question, Mr. Scalia. I want to pose a variation of the question that Justice Gorsuch asked your friends on the other side. If we disagreed with you that intent was an independent element, and we think intent, as Justice Kagan was just suggesting, is wrapped into the burden-shifting framework, would you like us to just stop there, or do you think it would be valuable to say something more about the contributing factor in the burden-shifting test? Certainly we think the Court should proceed to address the second issue. That has been briefed by the parties. It was integral to the Court's decision below. If you read where it said that there had to be retaliatory intent, by the way, retaliatory intent, it did not say there had to be animus. If you read that, immediately in the same place it explained the problems with the instruction that was given. That is a widely used instruction that the government has backed away from here, so has Petitioner. I think you are leaving an enormous amount unsettled in whistleblower law if you do not address that and you do not address also the discriminatory or retaliatory intent that is required to be established. Justice Jackson? And would we also cover how you would go about proving the retaliatory intent? And I just ask, and this is just a short question, which is, ordinarily, my understanding is that a burden-shifting test is used precisely because of the reasons that Justice Kagan pointed out, that we do not require sort of direct evidence of what is in the head of an employer. So if this is a separate element, are you suggesting that we have two burden-shifting tests operating in this environment, one that relates to causation and uses the contributing factor, and another that relates to intent and I guess uses motivating or but for or because or something? No. We are suggesting just a single burden shift still, which is, as we have explained, a defense to relief, but the plaintiff's burden, when the plaintiff is done with this case, it's been shown to be a violation. So I understand, but I guess my question is just, you would require the plaintiff to bring direct evidence of this intent. It couldn't do it during sort of the ordinary way that it's done in discrimination cases. Not at all, Justice Jackson. There would need to be a finding of intent, but that can be inferred from circumstantial evidence. We would not require direct evidence. We are merely saying that it would be so remarkable under a discrimination statute or retaliation statute to find a violation, as SOX does, without even finding that there was retaliatory intent. Thank you. Thank you, Counsel. Thank you. Rebuttal, Ms. Anand? Thank you, Your Honor. I want to start by addressing Justice Kagan's question about the relationship between our position and the SG's position. So we agree on two key things. First, contributing factor cannot include an animus requirement, and it cannot include retaliatory intent to the extent that means something more than the JA-180 language that affects the decision. Second, the burden-shifting framework is how you capture discrimination. And I don't think I heard my friend on the other side give you an example of why Justice Gorsuch's proposed instruction, which is step two of the burden-shifting framework, doesn't adequately capture, doesn't adequately exclude innocent employers, setting aside the clear and convincing evidence standard, which of course is Congress's prerogative. And this Court has already held that that's what discrimination means, right? That's Bostock. Discrimination has occurred if changing the employee's sex would have yielded a different choice. That's Abercrombie. Three elements for discrimination. Adverse action because of protected activity. So you're not breaking any new ground here, and I'm happy to explain Staub and Halliburton that my friend on the other side cited if there are questions about those. To the extent this Court is inclined to decide between the JA-130 formulation, which tends to affect in any way, which is our preferred formulation, or the JA-180 affects the decision in any way, and again, I don't think you need to do that because both instructions were in this case, but to the extent this Court is inclined to choose between them, I'd like to say a few words on why I think the JA-130 formulation is the preferred one. So first, the statute notably doesn't say contributing factor in the decision, and that's notable because as the SG's office explained, Mount Healthy does use the in-the-decision formulation, so it's notable that Congress chose not to use that. Second, this would collapse the difference between contributing and motivating factor. So motivating factor, Pricewaterhouse, if we ask the decision-maker to list the reasons and they were truthful, the protected trait would be on that list. That's basically saying it's a contributing factor in the decision, and Congress chose to use contributing factor and not motivating factor in this context. And third, Murano seems to have defined this authoritatively a generation ago. So Congress is well aware of that definition when it incorporated it into SOPS. So again, for us to win, you just have to say no animus in contributing factor and no retaliatory intent to the extent it means more than affects the decision, and burden-shifting framework is all you need to show to get at discrimination. If you want to go further and choose between these two instructions, I've given you my position on why the JA-130 formulation is preferable. Thank you, Counsel. The case is submitted. Thank you.